IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ITHACA VENTURES k.s. and ITHACA DEVELOPMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NINTENDO OF AMERICA INC. and NINTENDO CO., LTD.,<br><br>Defendants. | C.A. No. 13-824-GMS |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

On May 9, 2013, the plaintiffs, Ithaca Ventures k.s. ("Ithaca Ventures") and Ithaca Development, LLC ("Ithaca Development") (collectively, "Ithaca" or "the plaintiffs"), initiated the instant action against Nintendo of America Inc. ("NOA") and Nintendo Co., Ltd. ("NCL") (collectively, "Nintendo" or "the defendants"). (D.I. 1.) Ithaca alleges infringement of U.S. Patent No. 6,624,802 ("the '834 Patent"). (*Id.* ¶¶ 22–26.) Presently before the court is Nintendo's Motion to Transfer this action to the Western District of Washington pursuant to 28 U.S.C. § 1404(a), (D.I. 10.), and Nintendo's Motion for Sanction pursuant to Rule 11 of the Federal Rules of Civil Procedure. (D.I. 16.) For the reasons that follow, the court will grant Nintendo's Motion to Transfer and deny Nintendo's Motion for Sanctions as moot.

### II. BACKGROUND

As described in the Complaint and the parties' briefing, Ithaca Ventures is a limited partnership organized under the laws of the Slovak Republic. (D.I. 1, ¶ 1.) Ithaca Development is a limited liability company organized in the state of Delaware with its principal place of

business in Dallas, Texas. (*Id.* ¶ 2.) Ithaca Development is a subsidiary of Ithaca Ventures and is the exclusive U.S. licensee of the '834 Patent at issue. (*Id.* ¶ 2.) Ithaca Ventures was organized in Delaware on April 22, 2013. (D.I. 13, Ex. 2.) NCL is a Japanese corporation with its principal place of business in Kyoto, Japan. (D.I. 1, ¶ 3.) NOA is a Washington corporation with its principal place of business in Redmond, Washington. (*Id.* ¶ 4.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether the convenience and fairness considerations weigh in favor of transfer."[1] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The court engages in a two-step inquiry. It first determines whether the action could have been brought originally in the proposed transferee forum and then asks whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice. *Smart Audio Techs., LLC v. Apple, Inc.*, No. 12-134-GMS, 2012 WL 5685742, at *1 (D. Del. Nov. 16, 2012). It is the defendant's responsibility to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879-80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV. DISCUSSION

### a. The Propriety of the Transferee Forum

The court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that the plaintiffs' lawsuit could have

---

[1] The statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

2

originally been filed in the Western District of Washington. As such, the court presumes venue there would be proper and proceeds to the second step.

### b. The *Jumara* Analysis

The court next must consider whether transfer to the Western District of Washington would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, considering the various private and public interests guarded by § 1404(a). *See Jumara*, 55 F.3d at 879. To this end, the court does not apply any "definitive formula" but, instead, considers each of these "*Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> plaintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court addresses each of these "*Jumara* factors" in turn.

1. <u>Private Interest Factors</u>

   a. *Plaintiff's Forum Preference*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. Nintendo argues that Ithaca's choice of forum is entitled to little weight because Delaware is not truly Ithaca's "home turf" and is a forum with little connection to this case. (D.I. 11 at 5–6; D.I. 27 at 1–3.) Nintendo contends that Ithaca

3

Development's organization in Delaware mere weeks before filing this lawsuit demonstrates the plaintiffs were trying to manufacture venue. (D.I. 11 at 5–6; D.I. 27 at 2.)

Ithaca instead argues that its choice to file this lawsuit in Delaware is entitled to maximum deference, strongly weighing against transfer. (D.I. 20 at 6–7.) Specifically, Ithaca points to the fact that Ithaca Development was organized in Delaware, making Delaware its "home turf." (*Id.*)

Ithaca is correct that "a plaintiff's choice of a proper forum is a paramount consideration . . . and should not be lightly disturbed." *See Shutte*, 431 F.2d at 25. But this general statement is not without exceptions. In particular, the court will afford "something less than maximum deference" to the plaintiff's chosen forum where the plaintiff is not truly at home in the forum state. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Moreover, while a company's situs of incorporation or organization will often correspond to its "home turf," *see Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012), the court must examine closely the facts of each "to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *See In re Microsoft Corp*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).

The court agrees with Nintendo that Ithaca's forum choice should not be afforded maximum deference. Even though Ithaca Development is organized under Delaware law, its principal place of business being in Texas diminishes the plaintiffs' argument that it is at home in Delaware. And Ithaca Development's organization under Delaware law mere weeks before filing this lawsuit further undermines its position, suggesting to the court that its organization here was motivated significantly by the instant litigation. *See In re Microsoft Corp*, 630 F.3d at 1365 ("The only added wrinkle is that [plaintiff] took the extra step of incorporating under the

laws of Texas sixteen days before filing suit. But that effort is no more meaningful, and no less in anticipation of litigation, than the others we reject."); *see also id.* at 1364 ("[It is a] fallacious assumption[] that this court must honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient."

In view of the foregoing, the court concludes that Ithaca's forum selection is entitled to some degree of heightened deference, but not to "paramount consideration." *See Shutte*, 431 F.2d at 25; *see also In re Link_A_Media*, 662 F.3d at 1223.

### b. *Defendant's Forum Preference*

The next private interest factor to consider is Nintendo's forum preference. *See Jumara*, 55 F.3d at 879. In this case, Nintendo clearly prefers to litigate in the Western District of Washington, the District where NOA operates its principal place of business and headquarters. This factor weighs in favor of transfer, although this factor is only given limited weight. *See Intellectual Ventures*, 842 F. Supp. 2d at 759 ("Under Third Circuit law, [a defendant's] preference for an alternative forum is not given the same weight as [a plaintiff's] preference."); *CNH Am. LLC v. Kinzenbaw*, No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009) ("While a defendant's preferred venue is a factor that the court considers, it is not sufficient to displace the plaintiff's own choice of venue.").

### c. *Whether the Claims Arose Elsewhere*

The third private interest factor the court must consider is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosci., Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.,*

5

2012 WL 5865742, at *7. Accordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral.

Ithaca argues that this factor should be neutral here because Nintendo's accused infringing products are sold throughout the United States—"The national scope of the infringing activity makes this factor neutral." (D.I. 20 at 8 (citing *Personalized User Model LLP v. Google, Inc.*, No. 09-525-JJF, 2009 WL 3460767, at *2 (D. Del. Oct. 27, 2009).)

Nintendo argues that this factor weighs in favor of transfer because NOA develops and markets the accused infringing products from Redmond, Washington, within the Western District of Washington. (D.I. 11 at 7). The court has recognized that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11-1050-GMS, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013) (alterations in original) (quoting *Smart Audio Techs.*, 2012 WL 5865742, at *7). Here, the accused infringing products were designed and manufactured in Japan, but NOA marketed and developed the products from Washington. Beyond sales of the accused products, no activity relating to the products takes place in Delaware. (D.I. 11 at 7.)

Even though the products are not designed or manufactured within the District, *see ChriMar*, 2013 WL 828220, at *5, they are marketed from Washington, which ultimately will bear on Ithaca's claims of induced infringement and willful infringement. (D.I. 1, ¶¶ 24–26.) These claims implicate the defendants' knowledge and intent, and therefore "arise" where the products are marketed. The court finds this factor weighs slightly in favor transfer.

d. *Convenience of the Parties*

The court must also determine whether the proposed transferee forum would be more convenient for the parties. *See Jumara*, 55 F.3d at 879. In this assessment, the court weighs

6

several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (internal quotation omitted). Thus, the court is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

Nintendo suggests that litigating in the Western District of Washington is more convenient. Specifically, Nintendo argues that Delaware is not convenient for any party, and the Western District of Washington is significantly more convenient for Nintendo. (D.I. 11 at 7–9.) NOA is at home in the transferee District, and representatives from NCL will be able to work effectively from the Redmond, Washington office to minimize disruptions while traveling for litigation. (*Id.*) Moreover, several of Nintendo's anticipated witnesses are also already in Washington. (*Id.*) Nintendo argues that Ithaca has no contact with Delaware, making it equally convenient for it to litigate in the Western District of Washington as in Delaware.

Conversely, Ithaca argues that Nintendo has failed to demonstrate a physical or financial burden that would make litigating in Delaware burdensome. (D.I. 20 at 9–10.) Ithaca notes that Nintendo's financial resources outweigh those of Ithaca, thus minimizing any burden for Nintendo to travel. (*Id.* at 10.) Ithaca argues that its primary witnesses, the two inventors of the '834 Patent, both live in Munich, Germany, and it is more convenient to travel from Munich to Delaware than Washington. (*Id.* at 9.)

The court agrees that Delaware is not a convenient forum for any of the parties. Ithaca's argument that it is more convenient for its witnesses to travel directly from Munich to

Philadelphia is not persuasive. (*Id.*) The witnesses already have to travel a great distance just to appear in Delaware. The court does not suggest that an additional few hours on a plane is irrelevant, but it does find that Ithaca's witnesses will be inconvenienced regardless of the forum. Similarly, Ithaca Development's principal place of business is in Dallas, thus requiring it to travel a substantial distance itself. In contrast, it is significantly more convenient for Nintendo to defend in the Western District of Washington because NOA is physically located there. *See Smart Audio Techs.*, 2012 WL 5865742, at *7. Several of Nintendo's anticipated witnesses are there. While it is true that Nintendo will require witnesses and representatives from NCA to travel from Japan, it is slightly more convenient for them (as opposed to Ithaca's witnesses) because they would be able to work from NOA's headquarters in Redmond.

At the very least, it is equally inconvenient for the foreign parties and witnesses on both sides to litigate anywhere in the United States, whereas, for the domestic parties, it is significantly more convenient to litigate in the Western District of Washington. It is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties. *See In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1998 (Fed. Cir. 2009) (ordering transfer where evidence and witnesses were closer to the transferee district, whereas the venue chosen by the plaintiff had "few or no convenience factors"). The court finds this factor weighs in favor of transfer.

  e. *Convenience of the Witnesses*

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879.

The parties focus on a single witness, Sandy Hatcher, a former NOA senior licensing manager. Nintendo expects her to be a testifying third-party witness. Nintendo argues that Ms.

8

Hatcher lives within the subpoena power of the Western District of Washington but outside the subpoena power of the District of Delaware, thus weighing in favor of transfer. (D.I. 11 at 9.) In contrast, Ithaca argues that (1) Nintendo has not demonstrated why Ms. Hatcher's testimony would be important, and (2) there is no reason to believe that Ms. Hatcher would not voluntarily testify or that she would not cooperate with Nintendo. (D.I. 20 at 12.) Ithaca further argues that this *Jumara* factor focuses on multiple "witness*es*"—not a single witness. (*Id.* at 13.) Ithaca contends this factor is neutral.

The court finds that Ms. Hatcher would have relevant testimony on the way the accused products were marketed. The court also notes that Nintendo need not prove that Ms. Hatcher "may actually be unavailable for trial in one of the fora." *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, No. 12-cv-1479 (GMS), 2013 WL 4496644, at *5 (D. Del. Aug. 21, 2013). Ithaca "overstates the moving party's burden of demonstrating that a third-party witness will be unavailable or unwilling to travel to Delaware. . . . [I]t is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power." *See id.* at 6. Ms. Hatcher is not subject to Delaware's subpoena power, whereas she is subject to Washington's power. Moreover, she is no longer employed by Nintendo, thus providing some reason to believe that she will refuse to testify. *See id.* Nonetheless, because Nintendo has only identified a single third-party witness, the court finds this factor only minimally favors transfer.

f. *Location of Books and Records*

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Nintendo asserts that this factor favors transfer because the "majority of [corporate]

9

documents ... [and] [c]ertain technical documents" are located in the Western District of Washington. (D.I. 11 at 9–10.) Nintendo contends that these documents are relevant to questions of both direct and induced infringement. (D.I. 27 at 7.) In response, Ithaca argues that (1) the bulk of the relevant books and records are in Japan; (2) the corporate documents in Redmond concerning sales and marketing are not the "crux" of the case; and (3) Nintendo has made no showing that it would be a burden to produce these documents in Delaware. (D.I. 20 at 13–14.)

In consideration of the parties' arguments and the relevant law, the court agrees with Nintendo on this point. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *ChriMar*, 2013 WL 828220, at *6 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Ithaca's argument that this factor is neutral because not *all* of the books and records are in Washington is unpersuasive. The court will not disregard convenience where it can be found, simply because the circumstances are not ideal. Furthermore, Ithaca has alleged induced infringement, thus making the corporate documents in Redmond probative. Finally, although modern technology makes the task of transporting electronic evidence far less onerous, the court must nevertheless accord at least some weight to this factor. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224; *In re Nintendo*, 589 F.3d at 1998; *Smart Audio Techs.*, 2012 WL 5865742, at *9. As such, this factor weighs slightly in favor of transfer.

2. Public Interest Factors

The parties do not dispute two of the public interest factors: enforceability of the judgment and the familiarity of the presiding judge with the applicable law. As such the court excludes these factors from its analysis and considers them neutral.

### a. *Practical Considerations*

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Nintendo provides substantially the same arguments offered in support of its position on the private "convenience of the parties" factor. (D.I. 11 at 10–11.) Ithaca provides no arguments of its own why Delaware would be more practical but, rather, counters that Nintendo's arguments should be disregarded (D.I. 20 at 14.)

The court agrees with Ithaca. Because the practical considerations factor is a "public interest" factor, "at least some attention" must be paid to the public costs of litigation. *ChriMar*, 2013 WL 828220, at *7. Because neither party addresses the broader public costs of proceeding in one district or the other, the court finds this factor neutral. *See id.*

### b. *Court Congestion*

The court also considers the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Nintendo cites Federal Court Management Statistics to show that the District of Delaware is significantly more congested than the Western District of Washington. (D.I. 11 at 11–12; D.I. 13, Exs. 3, 4.) According to the most recent statistics cited by Nintendo, the District of Delaware has 660 pending cases per judgeship, which is the 15th most of any district in nation. When these cases are weighted to take into account time and complexity, the District of Delaware has the 2nd most cases of any district in the

11

nation. (*Id.*) In comparison, the Western District of Washington has the 17th most weighted cases of all districts. (*Id.* Ex. 3.) Regarding time from filing to disposition, the District of Delaware is 8 months compared to 6.2 months for the Western District of Washington. (*Id.* Exs. 3, 4.) For time from filing to trial, Delaware is 32.3 months compared to 19.3 months for the Western District of Washington. (*Id.*) Nintendo argues that these statistics definitely establish that the District of Delaware is more congested, resulting in increased administrative difficulty.[2]

Ithaca characterizes the difference in the time to disposition between the districts as "marginal." (D.I. 20 at 15.) Moreover, Ithaca argues that the District of Delaware actually handles patent cases, specifically, more efficiently than the Western District of Washington. Ithaca argues that the time from filing to trial for patent cases is 2.03 years in Delaware, versus 2.19 years in the Western District of Washington.[3] (*Id.*)

This District's large caseload has not, in the past, been a sufficient justification for transfer. *See Intellectual Ventures*, 842 F. Supp. 2d at 759–60; *Human Genome Sci., Inc. v. Genentech*, No. 11-082-LPS, 2011 WL 2911797, at *10 (D. Del. July 18, 2011). However, increased times from filing to disposition and trial are important factors that do influence the court's calculus. Although Nintendo's statistics would be more convincing if they were specific to patent cases, the court finds Ithaca's statistics even less compelling, as they come from an article published back in 2010. As demonstrated by the Federal Court Management Statistics, the District of Delaware's docket has changed substantially in recent years. The court finds this factor weighs slightly in favor of transfer.

   c. *Local Interest in the Litigation*

---

[2] The court notes that, in the time since the instant motion was filed and briefed, the statistics have been updated, but there have been no material changes in these figures. *See Federal Court Management Statistics*, U.S. COURTS (June 2014), http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx.

[3] Ithaca cites Mark A. Lemley, *Where to File Your Patent Case*, 38 AIPLA Q.J. 401, 418 (2010).

The transfer analysis requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. Nintendo argues that the Western District of Washington has an interest in resolving the case because it involves a local business, NOA, which is headquartered within the district. (D.I. 11 at 12.) Ithaca rejects Nintendo's argument as having any bearing on this factor.

The court agrees with Ithaca. A district does not have a local interest in resolving litigation simply by virtue of having one of the parties present there. To hold otherwise would be to give undue weight to the location of the parties, which has already been accounted for in the private interest factors. This is especially true for patent infringement cases.

> [P]atent litigation does not constitute a local controversy in most cases. Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by courts of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were establish to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

*Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012). Thus, this factor is typically neutral in the context of patent litigation because patent issues usually "do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs, Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2009). Nintendo has not suggested that the circumstances in this case involve particularly local issues. Therefore, the court finds the "local interest" factor to be neutral.

### d. *Public Policy*

Finally, the court must consider the "public policies of the fora" in weighing the propriety of transfer. *Jumara*, 55 F.3d at 879. Ithaca argues that Delaware businesses are encouraged to use the Delaware courts as a forum for resolving disputes. (D.I. 20 at 16 (citing *Intellectual*

13

*Ventures*, 842 F. Supp. 2d at 760).) Nintendo counters that neither forum has a controlling public policy in this case. (D.I. 27 at 6.)

The court agrees with Nintendo. Although it is true that "[t]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes," this policy would not be served in the instant case. *See Intellectual Ventures*, 842 F. Supp. 2d at 760 (alteration in original). First, whereas all the parties in *Intellectual Ventures* were incorporated or organized in Delaware, here only Ithaca Development is organized in Delaware. Second, the strength of this general public policy statement is greatly diminished here, where Ithaca Development has no ties to Delaware, and its organization in Delaware was purely for litigation purposes. Instead, there is an overriding public policy throughout the federal court system to discourage parties' attempts to circumvent the jurisdictional and venue laws. *See In re Microsoft Corp*, 630 F.3d at 1364. The court finds that there is no relevant public policy in either forum, so this factor is neutral.

3. Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court concludes that the defendants have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Ithaca's forum preference weighs against transfer and, as the court explained above, that preference does not warrant maximum deference in this case. Ithaca's attempt to manufacture venue by organizing in Delaware just before filing suit mitigates the weight of its choice of forum. In contrast, several factors counsel in favor of transfer.

V. CONCLUSION

For the reasons discussed above, the court will grant Nintendo's Motion to Transfer (D.I. 10) this action to the Western District of Washington pursuant to 28 U.S.C. § 1404(a). Having

14

granted the motion to transfer, the court denies Nintendo's Motion for Sanctions as moot.[4]

Dated: September 25, 2014

_____
UNITED STATES DISTRICT JUDGE

---

[4] Nintendo should pursue its motion for Rule 11 sanctions before the transferee district court. *See One on One Basketball, Inc. v. Global Payments Direct, Inc.*, No. 13-2020 (CKK), 2014 WL 1617707, at *5 (D.D.C. Apr. 23, 2014) (declining to rule on defendant's motion to dismiss after granting motion to transfer). Moreover, the jurisdiction of the transferor court ceases upon entering an order changing venue. *Cf. Glasstech, Inc. v. AB Kyro OY*, 769 F.2d 1574, 1576 (Fed. Cir. 1985) (discussing transfer in the context of multi-district litigation, under 28 U.S.C. § 1407).